# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JAMIE LUCAS,**
**Claimant Below, Petitioner**

**vs.)    No. 17-0926** (BOR Appeal No. 2051901)
(Claim No. 2016005543)

**PATRIOT COAL CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jamie Lucas, by John Shumate Jr., his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Patriot Coal Corporation, by Henry C. Bowen, its attorney, filed a timely response.

The issue on appeal is medical benefits. The claims administrator denied authorization of a TENS unit and referral to John Orphanos, M.D., on November 9, 2016. The Office of Judges affirmed the decision in its March 27, 2017, Order. The Order was affirmed by the Board of Review on September 25, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lucas, an underground mining foreman, was injured during the course of his employment on August 20, 2015, when a rock fell on him, pinning him to a wall. The employee's and physician's report of injury, completed that day, indicates Mr. Lucas treated at Raleigh General Hospital and diagnosed with concussion with loss of consciousness, neck sprain, and lumbar sprain. A lumbar x-ray showed no fracture or dislocation. A brain CT showed no acute process. A CT of the cervical spine was negative. The claim was held compensable for concussion, cervical strain, thoracic strain, and lumbar strain on August 31, 2015.

1

A lumbar CT was performed on September 2, 2015, and was negative. A cervical MRI performed on November 23, 2015, showed no disc protrusions, central canal stenosis, or neural foraminal stenosis. Mr. Lucas was treated by Dr. Orphanos on December 17, 2015. Dr. Orphanos indicated Mr. Lucas was seen for evaluation of neck, bilateral arm, lower back, and bilateral leg pain. Mr. Lucas had attempted physical therapy but could not tolerate it. Dr. Orphanos diagnosed paresthesia of the hands, low back pain, and neck pain. Conservative treatment was recommended. It was noted that there was no evidence on the MRI of anything that would be causing the neck or radicular pain. Dr. Orphanos recommended an MRI to further evaluate the lumbar spine.

A.E. Landis, M.D., performed an independent medical evaluation on January 18, 2016, in which he opined that Mr. Lucas sustained a cervical and lumbar contusion/strain/sprain as a result of the work-related injury. It was noted that he underwent an EMG/NCV that showed some radiculopathy at C5-6, which did not correlate with clinical findings. An MRI showed a disc herniation at L5-S1, which also did not correlate with the clinical findings. Dr. Landis found that Mr. Lucas was significantly deconditioned, had no job to return to, and had no motivation for a rapid recovery. He recommended aggressive physical therapy for four to six weeks followed by an aggressive work conditioning program. At the time of examination, Mr. Lucas was capable of modified work. He had not yet reached maximum medical improvement but would after physical therapy and work conditioning.

A February 2, 2016, treatment note by Dr. Orphanos indicates a lumbar MRI had shown degenerative disc disease, lumbar spondylosis, and a small, unimpressive central disc herniation at L5-S1. There was no evidence of nerve root compression. The diagnosis was lower back and neck pain. Injections were recommended.

Dr. Landis performed a second independent medical evaluation on May 16, 2016, and stated that he had been asked to determine Mr. Lucas's ability to return to work. Dr. Landis concluded that Mr. Lucas had reached maximum medical improvement but it was impossible to ascertain his ability to return to work given the symptom magnification present in this case. Dr. Landis strongly recommended a functional capacity evaluation, though he opined that the evaluator would likely not be able to determine Mr. Lucas's level of functioning either. He assessed 5% cervical and 5% lumbar impairment for a total of 10% whole person impairment. Dr. Landis stated in an addendum that if he had to assign a level of functioning, it would be sedentary due primarily to psychological reasons.

In a June 8, 2016, treatment note, Barry Vaught, M.D., diagnosed cervical radiculopathy, post-concussion syndrome, bilateral carpal tunnel syndrome, paresthesia of the skin, and memory loss. Dr. Vaught prescribed wrist splints, requested an EMG for the lower extremities, and referred Mr. Lucas for a neuropsychological test to evaluate his memory loss. On June 16, 2016, the claims administrator granted Mr. Lucas a 10% permanent partial disability award.

A treatment note by Andrew Thymius, D.O., dated June 21, 2016, indicates Mr. Lucas had continued back pain despite an injection. A cervical injection had given him 70% pain relief. Mr. Lucas requested referral to a surgeon for his lower back. Dr. Thymius diagnosed lumbar

intervertebral disc displacement, and cervical disc disorder with radiculopathy. He recommended referral to Rajesh Patel, M.D., for possible lumbar spine surgery. That referral was denied because the claims administrator stated that Mr. Lucas had been found to be at maximum medical improvement for the compensable injury.

Mr. Lucas began treating with Syed Zahir, M.D. On July 1, 2016, Dr. Zahir noted that Mr. Lucas had significant limitation of motion of the cervical spine and very minimal motion of the lumbosacral spine. He had undergone an injection three weeks prior that did not help. The diagnoses were chronic neck and back pain, upper and lower extremity radiculopathy, diabetes, and obesity. Dr. Zahir found that Mr. Lucas had not yet reached maximum medical improvement. He found that Mr. Lucas should be under the care of his neurological and spine surgeons. On September 20, 2016, Dr. Zahir stated that Mr. Lucas was incapable of working and should be under the care of Drs. Orphanos and Patel. The diagnoses remained the same. On November 29, 2016, Dr. Zahir again stated that Mr. Lucas had severely limited range of motion, and he needed to be treated by Drs. Orphanos and Patel. The diagnoses remained the same.

The claims administrator denied authorization of a TENS unit and referral to Dr. Orphanos on November 9, 2016. The Office of Judges affirmed the decision in its March 27, 2017, Order. It found that the record clearly shows that Mr. Lucas suffers from degenerative disc disease and spondylosis. It determined that these are factors that are causing pain and discomfort and per West Virginia Code of State Rules § 85-20-37.8 (2006), "[c]o-morbidity (e.g., degenerative disc disease, spondylolisthesis, segmental instability, osteoporosis, spine deformity) may be associated with a high incidence of persistent symptoms but are not compensable conditions". The Office of Judges further found that Mr. Lucas had reached maximum medical improvement, as found by Dr. Landis and supported by Dr. Orphanos's treatment notes. It also determined that persistent symptoms do not, in and of themselves, justify medical treatment in a claim. The Office of Judges found that Dr. Landis stated in his report that Mr. Lucas underwent extensive treatment and evaluation for the ongoing symptoms. He concluded that Mr. Lucas was obese, significantly deconditioned, and lacked motivation to improve as he had no job to which he could return. The Office of Judges determined that a finding of maximum medical improvement does not preclude further treatment; however, in this case, the treatment notes of Drs. Landis and Orphanos are consistent and reliable and show that further treatment in this claim is not medically related or reasonably required to treat the compensable injury. The Office of Judges concluded that the claim has been held compensable for concussion, cervical strain, thoracic strain, and lumbar strain only. Per West Virginia Code of State Rules § 85-20 (2006), a sprain/strain should resolve in six to eight weeks. Treatment beyond that time must be justified as necessary. The Office of Judges found that neither Dr. Zahir nor Dr. Thymius met that criteria. The denial of a requested TENS unit and referral to Dr. Orphanos was therefore affirmed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 25, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The claim has been held compensable only for a concussion and cervical, thoracic, and lumbar sprains. A preponderance of the evidence suggests that the requested TENS unit and referral to Dr. Orphanos is not medically necessary or reasonably

required treatment for these compensable conditions. The requested treatment and referral are for preexisting, noncompensable conditions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

4